Your Honor, Mr. Sosa was convicted of drug trafficking and sentenced to 360 months in prison based on the word of three drug trafficking convicts whose credibility was the key issue for the jury. The government polluted the jury's credibility determination first by having a federal agent testify that Mr. Sosa fit the profile of a typical drug trafficker and of a wholesaler distributor in a typical drug trafficking organization. Second, by improperly bolstering and vouching for the three drug trafficking witnesses. And third, by using the out-of-court statements of a federal agent in violation of the Confrontation Clause. These errors individually require reversal and cumulatively rendered Mr. Sosa's trial fundamentally unfair. Counsel, is it your position that the only evidence in the record to support your client's guilt is taint? Each level of it is tainted, you know, as you just named the three ways that you think the evidence is problematic. That there's no other evidence in the record other than that of the code of conspirators and then also the case agent, and is that your position? So such that there isn't a clean way that you could say, well, this is under plain error, that this should be affirmed. Your Honor. It's a friendly question. Yes, Your Honor. There's other evidence in the record, but I don't believe there's other evidence in the record that shows that he was involved in the drug trafficking activities. In other words, there's evidence that his mother, Patty's, picture was on his Facebook page. But that doesn't make everybody has their mother on their Facebook, maybe, is what you argued in the brief. Yes, Your Honor, that's correct. So other than evidence that's tangential, I guess we'd say, yes, it's my position that the incriminating evidence against him came from the word of Laura Galvan and Sarmiento. Or the case agent who was linking him up with his mother being a drug trafficker. Well, there's the improper testimony that violated the confrontation clause, and then there's improper expert testimony, Your Honor. And while we're talking about the question about no evidence, in Smith, which was a vouching case, this Court looked at the error and said that even though the evidence is legally sufficient, it was not overwhelming, and this Court reversed on plain error review. So it's not that there has to be no evidence of guilt. It's just that the evidence, the improper error, so tainted the jury's consideration that it calls for a reversal on plain error review. As this Court well knows, a federal agent can't testify to profile evidence of a drug trafficking organization and then testify that a defendant fit that profile, and a federal agent can't testify to the functional equivalent of a defendant's intent or criminal intent. And clearly, Agent Bradford did that here. He testified to the typical drug trafficking organization and the roles in it. He testified that Mr. Sosa fit the profile of a wholesaler distributor. Let's say you're right that there was some improper profiling in this case. That was not objected to at trial, was it? That's correct, Your Honor. So this is only subject to plain error? Yes. We're on plain error review, Your Honor. And, of course, it is plain error. I think there's no doubt about it, given this Court's case law, especially the testimony that Mr. Sosa did not have homes, cars, phones in his name. His name wasn't on the money gram. He didn't have a job. His conduct was common among drug traffickers. So I think the error is plain, and I think it clearly affected his substantial rights. I mean, all three drug trafficking witnesses had criminal records, some substantial criminal records. All three were longtime drug users or sellers. All three admitted that they had lied to the agents and lied upon their arrest. One of the lies I think is really key is when both Galvan and Sarmiento are first arrested, they both tell the same coordinated lie, that they got the drugs on International Boulevard at Church's Fried Chicken, and that Sosa is to blame, leaving out Lura and covering up Lura's culpability as the main actor in all of this. And so you can see that they're coordinating their lies from the very beginning. So they all told lies. The whole defense was this terrible trio was lying, and that credibility was the lack of credibility was the defense. And the profile testimony gave the jury a conclusive opinion about Gil. It said he's guilty. It said he's a drug trafficker. It said he doesn't have any property. It says he didn't send the money grams, and so he's guilty, which is really horrible because it means if you're innocent, you're guilty, right? So it allowed the jury to ignore the inconsistencies, and it told the jury that he fit the profile of a typical drug trafficker, and the prosecutor used it in his rebuttal argument, the last thing the jury heard. As I said in Smith and in Gracia, this court reversed. Those were vouching error cases, but this court reversed on plain error because the credibility determination was key, and as I said in Smith, the court even stated that although the evidence was legally sufficient, it was not overwhelming. Just to carry it through, you did prongs one, two, and three. Will you just argue four now? I'm talking plain error. You argued prongs one and two. You said it's plain error under the precedent, under profile, and you argued prong three. Yes, Your Honor. Do you have ‑‑ can you address prong four? Yes, Your Honor. You sort of are by saying Smith and Gracia did, but you still need to say why in this case. Yes, Your Honor. On prong four, it basically rendered the ‑‑ each one of these errors, and together, but individually rendered the trial fundamentally unfair so as to be a miscarriage of justice because what it did was it took away the jury decision on whether he was guilty, which is the key constitutional right he had. It told the jury this person is guilty, he's a typical drug trafficker, and don't worry about all this other stuff. And so the fundamental unfairness, the miscarriage of justice, the injury to the integrity of the proceeding is to a fundamental constitutional right, and for these reasons, this Court should reverse his conviction. With regard ‑‑ Can you argue prong three as to the other two points that you have of error? Will you argue prong three? I'm asking you to tell how it affected his substantial rights on the other two errors that you ‑‑ Oh, the other two issues? Yes, Your Honor. I'm sorry. I didn't understand. Yes. With the improper bolstering, basically it's the same fundamental error, Your Honor. It's that these three witnesses provided all or virtually all of the incriminating evidence against Mr. Sosa, the jury had to determine to convict him whether to believe these witnesses or not, and the valging, improper valging and bolstering, which was egregious in this case, I'm on issue two now, not only invoked the imprimatur of the government, saying we said we would recommend a lower sentence for you if you told the truth, and, in fact, we did, which infers we think you told the truth and are a truth teller, but it invoked the imprimatur of the district judge because it told the jury on two out of the three witnesses, and the judge, knowing of the plea agreement to lower your sentence if you told the truth, lowered your sentence. How do you get around our ruling in Edelman? What? How do you get around our ruling in Edelman? Edelman seems to suggest that this kind of pointing to a plea agreement, noting that you're supposed to tell the truth, that's not improper bolstering. Yes, Your Honor. I am not contending that a prosecutor cannot, especially here where we did slightly attack the credibility of witnesses in opening statement, and so the case law says you can't introduce the plea agreement and ask the cooperating witness about it, and I'm not contending that you can't do that. What I'm saying is that the behavior, the prosecutor's invocation of the truth-telling provisions of the prosecutor's own imprimatur and the court's imprimatur on truth-telling is way beyond anything that's permissible under the law. It's not the agreement. It's and you did tell the truth, and that's why you're here and you got the good sentence. Yes, Your Honor. And the judge knows that because the judge gave you the good sentence because you were truthful. Yes, Your Honor. That's the part. Yes, it's the use of it, not just introducing it or asking. You're not challenging that the plea agreement could be in evidence? Correct, Your Honor. That's what Edelman said it can be. Correct, Your Honor. I am not challenging that, and I'm not challenging this Court's case law. I think it may have been Galavis. I'm not sure where it said if you attack the witnesses in opening statement, then the prosecutor can go into it. It's the use of it. It's the – it's just, I mean, the use of it. Personal bolstering by the prosecutor of his own knowledge of the truthfulness and the judge's knowledge of the truthfulness. Yes, Your Honor. And it's even beyond that because with, I think it was Lura, it's not only the prosecutor and the judge, but then the prosecutor says, and your lawyer's sitting here in court today, isn't he? And your lawyer told you the truth. So with Lura, who hadn't yet been sentenced, you've got the prosecutor watching over, you're telling jury, we've got the prosecutor watching over the witness, we've got the judge watching over the witness, and we've even got his own lawyer here watching over him. So, and to fill in the blanks, so there's no way he's going to tell the truth. I mean, look at these people making sure of this. And with regard to the third and fourth prong, Your Honor, I think the third and fourth prong for all three errors is the same. And I won't repeat myself unless the Court wants me to. But it's basically the right, fundamental right to a fair trial. And I will note with regard to that. Oh, you think his substantial rights are affected, his substantive rights are affected by the right. He didn't have a fair trial. Yes, Your Honor. Again, it took away the jury's credibility determination because it's telling the jury, look, I have determined this witness is truthful, the judge has determined this witness is truthful. With regard to one witness, the lawyer's sitting here making sure he's truthful. So, again, it affects the jury's credibility determination thinking, well, if they all think they're truthful, who are we? And I will note there was a jury note after two hours which shows some doubt about what we should do. And it's not conclusive. It says, can we convict on one count and not the other, which shows, I don't know if that shows whether they wanted to do a compromise verdict, whether they thought one count was sufficient and one count wasn't. But at least it shows that the jury had enough doubt about something to send out a note and ask a question. And with regard to the third error, Your Honor, it's the same third and fourth prong. Agent Bradford testified that an out-of-court DEA agent called him and that the out-of-court DEA agent told him that Patty had called him from Mexico and wanted him to be a courier of drugs, that he, in fact, confirmed that Patty was in Mexico and was dealing drugs. And Agent Bradford says, this corroborated what I knew. And this fit the transportation slot I had for Patty. So it's really interesting. This third error links with the first error because on the first error you have Agent Bradford improperly saying, Patty's the supplier. And then to bolster that, he brings in the out-of-court statement by the agent saying, this fit exactly with what I thought about Patty in his improper testimony. So they're interconnected and they're actually one improper or one error is actually bolstering the other. Your Honors, as I said, these errors alone require reversal. But together, it really took away the jury credibility determination from Mr. Sosa, took away his right to a fair trial and affects the integrity and fairness of the proceedings. And with that, Your Honor, I ask that you reverse his convictions. Thank you. Thank you. May it please the Court, good morning. Jessica Aikens for the United States. As you know, the plain error rule is designed to capture a very narrow set of errors, and we do have to go through the entire analysis. And I think we definitely can have some great conversations about the first and second prong before we get to the third and fourth. In this case, the question in the briefing by the defendant is whether the errors were plain and obvious and affected his substantial rights. Is it your position, is it the government's position that the profiling questions were not plain error? I'll tell you what, I think this is such an interesting question. I think it's very close, and I'll tell you why. There's lots of cases from this Court that show us it's improper. We agree with that. I think it's a little bit different. There's two things that come to mind, two important considerations is the witness and the purpose. If the Court's jurisprudence is that any time there's testimony about the drug trafficking organization and a witness tells you which slot every person was in, and that's error, then we will concede error. What I will tell you about the cases from this Court that I think are interesting and why ours is just a little bit different is, number one, the witness in question. All the cases that I've reviewed and that we've put in our briefs have to do with an agent being called for expert testimony to talk about the business model. Ours is a little bit different. Agent Bradford was actually the investigating officer in this case. He was the very last witness to testify, and everything he provided was his own personal experience, his own investigative things that were told to him by all three witnesses. So I think that's a little bit different versus calling an expert witness just to say, this is how these organizations work, whether you have an investigating agent saying, this is what I learned through the course of my investigation. The second thing that I think is very important is the majority of those cases are drug courier cases. A little bit different. So we're talking about couriers who actually have the drugs on their body. They're contesting knowledge of whether they had it, whether they knew it was in their car. The purpose of the testimony is very different as well. We don't have a courier. We're talking about a different person in this pyramid. Also, we're talking about each player's part, not the specific person's knowledge of the drugs. And so I think when you think about the purpose of the testimony and the person giving it, it's a little bit different. And the reason I hesitated to concede error completely is I don't think there's any cases that are unique to our situation where it's very clear in the facts that it's the investigating agent giving the information versus someone coming under as an expert testimony. If you don't mind, just explain why should there be a different rule based on the fact that it's a different role that you're focusing on? I don't know that it's necessarily a different role, but I think, I guess it's consensical to me that an agent can talk about what he learned and what that tells him about an investigation. So I think that's a little bit odd for us to draw this line that this agent who talked to all three witnesses, he's been on the case all this time, that he can't get before a jury and tell them what he learned. It strikes me as more problematic than just some expert who doesn't have anything to do with the case because if this is the agent who spent two years investigating the case, you're saying an agent can come in and say my investigation says he's guilty? First of all, there's a lot of hearsay problems in that because that's all based on what he's heard in his investigation from other people. But I think it cuts the opposite way. That's interesting. I understand your point, but I'll tell you what's different about this case. I'll take that. He doesn't say it's his opinion. What he says, her specific question is what the players, what you know from your investigation. He's repeating what those three co-conspirators told him. I don't know that that's his opinion. He's saying based on the evidence we know, this is what Lara told me, this is what Sarmento told me, this is what Galvan told me. That's a conclusion of guilt. I mean you're saying in a fraud case someone can come in and say, oh, I investigated this for three years, and that defendant there is guilty of running a Ponzi scheme. I think there's a slight distinction, but I understand that concern. And if that is the ruling from this court, we would concede that error. I just didn't feel like there was enough case law specific to show us where is the basis of this person's information. What is the answer to my question? Which was? Does the government believe there was an error here or not? Would you do this tomorrow again? Do you believe there's an error? If this court says no, then of course not. Well, I'm asking as you stand here in court today, having read this record and read the case law and being very prepared for argument, what is the government's? You've made some nuanced arguments, but what is the answer to the question? The answer is at this point no. I would not advise my prosecutors to do this again because I think it is on the line. But I would say we always need guidance from this court. People are doing the best they can. I don't think anyone was trying to get in evidence they shouldn't. I think that they believed at the time the evidence being presented was based on that agent's personal knowledge. And that seems like an okay way to present evidence, and people have always thought that. Should they tie it up? No. And I think I cited some of those cases that are on the third prong that say, look, the jury probably is going to tie it up together, but it isn't your job to do that. And we do understand that. We take note with that. I'm just pointing out it would be better to have a little bit further guidance on that from the cases because cases are very pointed about putting an expert testimony without giving you the context of where it came from. This is not something I would push them ever to do again. At the end of the day, even if there's an error, was it harmless? Oh, no. Because that's your argument, that it's harmless. Yes, yes. I think on all three issues we can quabble about the second prong if it was clear and obvious. But substantial rights, I mean, that goes to he was going to be acquitted. I think that that's what the defendant is going to have to show. Plain error is his burden. And I don't think that these small bits throughout this record of 2,500 pages, nine witnesses, a five-day trial, show that he could meet that prong. I don't think he actually has to show he was going to be acquitted. I think it has to be that the evidence is not strong enough to say that he would have been convicted otherwise. Okay. So under our case law. So what case tells you that he must come in and show that he absolutely would have been acquitted on prong three rather than as I phrased it? So my understanding is that it's a reasonable probability that the outcome is different. A reasonable probability that there's a problem that the evidence is not strong and you can't say that he would have been convicted. It's less than, it's more than harmless, but it's not 100% he would have been acquitted. I think either way they haven't shown that. Okay. What evidence would have convicted him other than the other tainted, allegedly tainted evidence? Every single witness. So obviously we have the three co-conspirators. But if the three co-conspirators are improperly bolstered so we can't use them, what do you have that's not tainted that we can't use? The record evidence, the agent's testimony. I mean, when you talk about the improper part of the document. No doubt there was a drug conspiracy here. There's tons of evidence about that. But tying this defendant to it, I know all three cooperators implicated him. But, you know, the jury's instructed, as you all know, you have to view cooperator testimony with great skepticism. Is there any documentary or other non-cooperator testimony that puts this defendant in the conspiracy? Most of the documents are just to corroborate the co-conspirators. So, yes, the most damaging testimony about the defendant obviously comes from the three co-conspirators and the agents. So, yes, but I think also you don't, my understanding is even if we're thinking part of their testimony is improperly bolstered, which I would submit to you it's not, but I don't think that means we don't look at all of their testimony. And here's the thing about the bolstering. But the agent's testimony also implicates the defendant, aside from the whole profiling thing, which is the defense. Following the agent's other investigations, what he got from the co-conspirators, and also that he's tying all this together between what they say. The thing about the bolstering, I guess, that bothers me a little bit is this was a free-for-all credibility on both sides. And so they opened the gate in their opening by saying everyone here is a liar, these guys don't pay child support, they're drug dealers. You can clearly, the government was clearly allowed to get the plea agreement into evidence. I think the government was clearly allowed to ask some questions about doesn't the plea agreement say you have to be honest, blah, blah, blah. But I have never seen this discussion go on to the extent it did in this case. I mean, frankly, it almost looked like bad advocacy because at some point it becomes like bowed off protest too much or are you so worried about your witness's truthfulness. Maybe that cuts the other way on prejudice. But can you show any other case that allowed this extent of questioning on this topic, and in particular that brought in the judges essentially blessing the truthfulness of the witness? I don't know of a case offhand that talks about the judge bringing in the evidence. There are several cases I put in my brief about them repeating. And I have talked to the prosecutors about this. I'm not endorsing this as the best way to practice, and I think they understand that. But there's also this gauntlet thrown at the beginning, and this is all about credibility, and both sides are doing it. And what bothers me a little bit about us just saying that this is error is there's a lot of evidence right before the Vordire record where they're all on the record discussing what's going to come in, the discovery. The defense attorney specifically says his intent is to cross-examine them on these plea agreements. He's not going to object because that's what they're doing. They're doing this credibility. And so I guess it's uncomfortable that one side can go so far, the other can't respond. What was the other side doing improper? They were bolstering their witness. I don't understand what you say there. No, I'm not saying that they were improper. I'm sorry. I meant that it's a back and forth. This whole trial is about credibility. They throw something out and say you're a liar. We say you're telling the truth. But the government has a higher responsibility. It's not an equal playing field in that regard. The whole idea is to say, well, if they can do something, we should be able to do it. You actually have more responsibilities. I understand that, Your Honor. And I think it goes back to scope, that if there's an invited scope about credibility, that we do have a right to correct that. Absolutely, but not using the prosecutor vouching and not using the judge vouching. Yes, and I've discussed with them that I don't think that's a good way to go, that that shouldn't have been put in there. But, again, because they made this indication that they're just going to cross-examine on credibility, it sort of goes into, well. . . That's every trial. It is, but it's a strategy, so. . . The trial is about especially cooperating witnesses are going to get attacked by the defense, and the bolstering rules say you have to rely on corroborating evidence, but you can't bolster. I mean, is there something unusual that credibility was challenged in this case? I think it's more than most trials I've read, I will tell you that. I'm not saying it's the most unique credibility case, but if you go back and read that opening, and then throughout the trial, he even said it today, the terrible trio, it's rampant with these three guys are drug dealers, liars, they are implicating him, they're lying, it's really Lara, it's not Sosa. It's all over. . . Does that justify the. . . Not as far as they went. I would agree with you there, but I do think, and for practitioners, that's where it gets confusing, and that's back to if you don't object, we're not stopping each other. We're not having a conversation about the law, and the judge is not making rulings. That's why this plain error is problematic, that if both people are going on with a trial, and this is the way they want to try it, we don't have any objections. We have no idea what your theory is. But you've got to stay well within the line so that you don't have all these. . . We come here month after month. We do. And people tell us, oh, well, it's right on the line, but I think we're inside the line. Don't get near the line. I agree, Your Honor. That's a very good lesson. I think we may have cut you off earlier. Talk to us about the untainted evidence against Mr. Sosa personally. In which are we calling the tainted? Well, just assume that all of counsel's arguments rise to error. I'm not saying they do, but just let's just focus on prong three. Okay. What is the untainted evidence that makes all these errors? Okay. So I don't. . . I guess I understand the Court's concerns with the bolstering, but I don't know that that necessarily negates all of the testimony of the three co-conspirators. And they gave such a wealth of information, and not all of it consistent, which I think leads to their credibility, which is the issue in this case. But this was such a big design, and what they had said consistently between, you know, Oscar Sosa told me to do this, told me to call his mom, and then you hear the next co-conspirator saying the same thing on different drug runs. And so the consistent theme shows what each party was doing in this conspiracy. And so I think it's hard to parse out every single argument they make, because I think they're small and limited to very specific things. I don't think we just don't look at all three co-conspirators. You had, separate from the three co-conspirators, you had Agent Bradford and. . . Agent Orr. We have the. . . Officer Nava. I'm sorry? Officer Daniel Nava. Yes. He provided the information. How did they tie Sosa to. . . The A files with. . . yeah. And a lot of this. . . I mean, a lot of cases are going to be. . . I'm asking how did these other witnesses tie Sosa. So Nava tied Sosa as being a family member. He put the mother in Mexico and that she was deported, which corroborated their story that they knew her from Mexico. They were getting the drugs from her. They also had, obviously, the Facebook records, the money gram with the money and all the parties, and also the bus tickets. There's a lot of record evidence that may not directly implicate the defendant, which we don't have to have direct evidence, but all of that corroborates everything that the officers were given from the co-conspirators. Does that answer your question? But it doesn't corroborate as to this defendant being the one picking up the drugs. Oh, sure. But we don't. . . I mean, we don't have to have direct evidence. I mean, that's not the rule. What are the documents? Well, they're just corroborating. It's just a big piece. Every piece is the big puzzle. He's not on the money gram. That's the whole thing, and the explanation is it's because he's here, right? They're saying it's because he's here illegally. You're saying it's because he doesn't want to be on this drug money. Yeah, but I think it's just all these little pieces that go to what those three people said, and I guess I see that there are problems here. I don't think that we're saying that there aren't, but I don't think they're to the degree that we're not looking at any of the testimony provided by the co-conspirators because on a few pages, out of this 2,500-page record, there were some statements that maybe went too far. I just don't think on the third prong that that gets us there. So that's my concern. How do you distinguish our other cases? Other cases with regard to. . . Granted relief on plain error. So when I've looked at the third and fourth prongs in those, I think it really goes to a lot of them it's not as much evidence, and the strength and overwhelming amount of evidence seems to be a big factor in cases, as well as the jury charge. We have to remember the law says that they've read it, and I pointed out so many things in there about the sentence reduction, the personal advantages of witnesses. They've been charged on the law and they know the law, and we shouldn't presume because there are a few instances where possibly some questioning went a little too far that the jury is not reading those instructions. And I think that's really important. I think it's hard to ignore that and the wealth of evidence. These are hard cases. Conspiracy cases are hard, and I think I go back to we are an adversarial system, and we don't always know what's going on down below. We can Monday morning quarterback people, but they are expected to object and be a part of this trial so that we know what's going on at what piece, and if a defense attorney takes a different tactic to not object to certain testimony but cross a witness, I think it's very hard to automatically assume error on the part of the government. It does seem this is an unusual case, though, in that you do have three, and it's not one cooperator. I get that. It's three, and that really helps you. But it is really implicating the defendant. It is three cooperators testifying for a benefit. You know, usually in these cases you see, oh, the defendant has cell phone records talking to the conspirator. I mean, there's usually direct documentary evidence that also implicates the defendant. And I don't, if you can point me to anything there, that would be very helpful. I'm not aware of any specific case in terms of directly tying the defendant in terms of phone records, but that sort of went to our theory that he wouldn't have that. So I think that kind of cuts both ways, too, is the non-evidence is actually evidence in this case. We do just bring the cases that we have. And I will say back to the ---- All right. And that's a good argument from the jury. I'm just not sure. This no evidence theory of, you know, he's not on any documents, that doesn't help you when we're trying to assess whether it's overwhelming evidence of guilt. Sure. And that goes back to the jury and their right to believe those three people. All the other evidence is what corroborates them. And that is, the weight of the evidence is up to the jury. And for them to make those calls about the three people, then you couple it with all the records and everything else that corroborates what they're saying. You know, it just dawned on me, two of the co-conspirators had been sentenced at the time of trial and one had not, and that is the one that I think possibly there were more questions asked. So maybe they shouldn't have been, but that defendant hadn't been sentenced yet. So that's another just learning lesson I'm thinking about. You know, the jury had the opportunity to know the sentence of the other people. They were charged on how they could think about that in their sentence compared to this defendant. Counsel, can you comment on the introduction of the undercover DEA's agent's background on Patty Sosa through Agent Bradford and why that's not inculpatory? Or do you agree that it is inculpatory? I tell you what, this is what I think. I think when you look at confrontation cases, they talk about the primary purpose why the evidence was given to see if it's testimonial. And I will just tell you, I think it is on the line. It's a very small piece. But I will say, I don't think the evidence, it's not, you know, when you talk about hearsay and confrontation, it's not put in for the truth of the matter to prove she's involved in this other drug situation. The prosecutor even says on the record a few pages later, if you'll look, this was in response to their argument that those three co-conspirators don't know Patty and Bertha and they couldn't prove they were in Mexico. So not in the best way, but we're putting that evidence on to show, hey, here's evidence, she is in Mexico and this is what she's doing. I don't think it was to prove she's still trafficking and doing all that because we didn't explore that in the questioning. It was simply, and like I said, I think it's three or four pages later where she says, well, he opened the door. We're responding to saying you said they can't verify that she was in Mexico. But it's saying she's a drug dealer. She's in drugs. It is. And she's the mom. Okay. Well, that's guilt by association. Yes, it is. Yeah. That's why we have the profiling problem, too. I understand, and those things work together. I had looked at a few cases that talk about, you know, background information, specific information where courts were finding this isn't an error, and that actually had to do with the defendant, like corroborating a tip, background information about a defendant. And I get the guilt by association, but this has nothing to do with him. It's two years in the future, has nothing to do with him or this case. It was simply put on to show this woman is in Mexico and trying to get rid of her drugs, which corroborates what the co-conspirator said. Thank you for your argument. Thank you. Your Honor, just briefly, I think the Court has my argument, and I just wanted to point out just a few things. First of all, off the top of my head, on the third prong, of course, it's a reasonable probability that it affected the outcome. From my recollection, a reasonable probability is less than probable cause, and in my memory I get that from either Kyle's v. Whitley or cases that cite Kyle's v. Whitley, that it's less than probable cause. Second, Judge Costa, with regard to a similar case, although it's almost similar, in Gracia, the agent said the defendant confessed. So that's even stronger evidence than this case, but I believe there was no other evidence that the defendant knew of the hidden cocaine, and this Court reversed on plain error. So that's a case where there was no other evidence except, of course, the defendant's confession and the cocaine that was hidden, and this Court reversed on plain error. And the interesting thing about Gracia in response to counsel's comment about the jury instructions is that in Gracia, this Court, on reversing, said that, yes, there was a general jury instruction, but it served only moderately to reduce the degree of prejudice. So that's a case that reversed where there was a jury instruction that went to the error. And finally, I would just say that it's clear that Agent Bradford's testimony on the out-of-court agent corroborates. He says twice at the beginning of the testimony, at the end of the testimony, this corroborated what I knew. Your Honor, for all these reasons, I request that you reverse Mr. Sosa's convictions and remand for a fair trial. Thank you very much.  This case is submitted.